We're going to move now to case number 8. This is Appeal 22-1258, United States v. Dejon Irving, and we're going to hear first from Ms. Remy. Take your time. Good morning, Your Honors. May it please the Court, my name is Colleen Remy, and I am here today on behalf of Defendant Appellant Dejon Irving. I'd maybe uncharacteristically like to start today with a point of agreement. I agree with the District Court that gun violence is devastating, both to individuals and communities. And I think Mr. Irving, more than many, might agree with that as well. If there were any evidence in this case that Mr. Irving contributed to this violence, I might not be here this morning. However, as it stands right now, Mr. Irving has been the victim of Chicago's gun violence now twice over. First, his family was shot at, with his young child being the victim of severe injuries from gun violence and triggering PTSD symptoms in Mr. Irving. Then again, he was the victim of Chicago's gun violence problem at sentencing. Here, the District Court held that the city's gun violence problem, he held it against in enhancing his sentence substantially above the guidelines range, to almost double the bottom end of the guidelines range, because Mr. Irving possessed a gun. Now, I've been doing this for some time, and I've seen many felon and possession cases, and as I know Judge Guzman also has, but the facts here are really straightforward. Mr. Irving had a prior felony offense. His felony offenses were for things like possession of controlled substances, for things like identity theft, and as a convicted felon, he was not allowed to have a gun, which he possessed. When he was stopped by officers, he ran. He was soon apprehended and taken into custody. Now, the court, what this record here does not contain are things that would take this case outside of the traditional heartland of cases of a felon and possession case. Does it take it outside of Judge Guzman's discretion? Meaning, what I'm hearing from you is that the argument is that the number was just too large, given what these facts are, and that's based upon the very many cases that you've seen and the court's seen. Is it something that takes it outside of what would be within the realm of Judge Guzman's discretion? Your Honor, we believe that this was substantively unreasonable, so yes, but also the procedural errors contributed, I believe, to such an enhanced sentence. The judge in this case appeared to believe that Mr.—I mean, made a reference at some point to Mr. Irving being violent. He discounted the fact that he had family support and had these things saying, well, even violent individuals can have support of their families. Well, Mr. Irving is not your traditional violent offender. He's never had a conviction for possessing or use of a firearm or any other dangerous weapon. His sole conviction for anything violent in his history was for slapping someone, which is not great, but it does not really take him outside of sort of the traditional—or certainly doesn't put him into a category of what we often see as a violent offender. He also substantially discounted Mr. Irving's mitigation factor. The story about his one-year-old child being shot at and him fearing for his life, while it certainly—no one's arguing that it excuses the conduct. It doesn't make it okay to carry a gun. What kind of gun was he carrying? He was carrying—I know it had an extended weapon. Yeah, that's a problem, isn't it? I mean, like I understand the argument. I understand his argument, but I also understand the reason that Judge Guzman didn't believe it. He's running from the police, carrying a weapon with an extended magazine. He's in criminal history category four. But he's also been enhanced for that. The guidelines accounted for the extended magazine. Yeah, he ran from the police, but he didn't brandish the gun. He didn't threaten them in any way with the gun. I would concede that while running with a loaded weapon is more dangerous— No, I do not believe so. That's another problem, too, right? If he fears for his child and he had a gun in his bedroom at home and said, my child is home and I keep a gun when I'm with my child because I fear for my child's safety, maybe Judge Guzman would have more reason to accept the argument. The argument presented at sentencing was that—the explanation was that while Mr. Irving was in prison, someone shot at the mother of the child and ended up injuring the child. And Mr. Irving believed that that was a warning to him for his own— he had a fear for his own life based on that situation. But we can't have criminals. We can't have felons running around with guns because they fear for their own lives, right? Certainly. There'd be a reason to arm all drug dealers. No, certainly, Your Honor. And that's—but that wasn't the argument. The argument wasn't that Mr. Irving never should have been convicted of a felon in possession. There is a reason we have the law. There is a reason that, you know, that is in place. He wasn't saying, don't convict me. I was afraid for my life. But it was—you know, the way he was treated at sentencing, when you read the entire thing, it appears that— I understand your argument, and it's not frivolous by any means. I mean, I understand your argument that he should not be saddled with Chicago gun violence, right? Sure, right. But Blagojevich argues he should not be saddled with prior politicians' convictions, right? Like general deterrence doesn't matter. In white-collar cases, when we do—I mean, I did a lot of public corruption cases. That was a big sentencing argument, right? Like, send a message to the sheriff that you can't be the sheriff and commit crimes because other predecessor sheriffs have committed these crimes, and we need to send a message to politicians that you can't commit public corruption offenses. And it seems to me to be in the nature of what Judge Guzman was doing, is sending a message of general deterrence. Look, Chicago is a very violent place right now, particularly with respect to guns. And as a matter of general deterrence, if you find yourself in front of me, your sentence is going to be enhanced to deter others from committing similar offenses. Right. And I did cite some literature in the briefing that suggests that while that is one theory, it is not borne out by the evidence. Now, maybe it would be different in a public corruption situation because those cases are so high-profile and there are only a few people. But you don't—but the average felon carrying a gun does not see every case that comes out of Judge Guzman. Like, it doesn't actually—the information doesn't actually— I'm with you there. I'm with you. But this is a policy discussion that we can have, because the argument there is general deterrence doesn't work because most people committing crimes can't see past the nose on their face, right? Right. And that argument can be applied to public corruption cases too. It always befuddles me how an officeholder is arrested, indicted, goes to prison, and then their successor is arrested, indicted, and goes to prison. Sure. And we see this all the time. Sure. But the—enhancing Mr. Irving's sentence here is not going to provide meaningful deterrence, and to the extent it does, it should not overwhelm the rest of the sentencing factors. I'm not—I don't want to say I agree or disagree with you, but the problem that I have is that seems to me to be an argument for the district court. That's where I—you know, that's kind of where the trouble for me fits in, is I think that's a real good—I mean, I think you could make a very good persuasive argument, but my question is, is that argument in the district court? And then when the district court rejects it, you know, what do we do? Well, to the extent that the district court sort of took this and ran with it, you know, no one argued that the court should be imposing an above-guideline sentence for general deterrence purposes or really for any other purposes. The government argued for a higher-end-of-the-guideline sentence, and the defendant argued for a lower-end-of-the-guideline sentence, pointing to various mitigating and aggravating factors. So—and to the extent that the judge over-relied on one particular sentencing factor that was not really argued below, we should reverse because that is a procedural error, over-reliance on the—I apologize, I—over my time. That's all right, Ms. Ramey, we'll give you a couple minutes of rebuttal. We'll now hear from Ms. Pinkston on behalf of the government. May it please the Court. My name is Kristen Pinkston, and I am here on behalf of the United States. The district court's sentence of 72 months imprisonment was procedurally sound and substantively reasonable. In answering Judge Brennan's question to defendants, nothing in the record takes this decision out of the district court's discretion. The district court more than adequately explained the decision to impose this above-guideline sentence on this record as to this defendant. Ms. Pinkston, can I ask you a question? I took so much of Ms. Ramey's time, I feel obligated to take some of your time and questions. If the district judge—hypothetically speaking, the district judge issues a sentence and gives seven reasons for his sentence, and we agree with six of them, but we disagree with one of them, okay? So we disagree with one of the reasons. And let's just say the district judge didn't get it wrong, but we think maybe the district judge didn't get it exactly right either. But the district judge didn't tell us how it weighed each of those seven factors. Are you following me? So the district judge says, I'm going to give you 74 months for the following seven reasons, one, two, three, four, five, six, seven. We agree with one through six. We disagree with seven. Do we have to send it back for resentencing? And the reason I ask that question is, do we have to tell district judges at sentencing to say the following? I'm going to sentence you to X amount of months based on the following seven factors. But if the court disagrees with any single factor or with six of the seven, then I rest my entire sentence on that single reason or those two reasons or three reasons or four, five or six that the court agrees with, which seems to me we would be in a like a totally ridiculous situation because every district judge would do that. Right. And I ask that question is a long winded question. But I ask that question because it seems to me that Judge Guzman's sentence would be substantially reasonable under his discretion, even without the Chicago violence reference. And I'm just not sure even if we disagree with that, do we have to send it back for resentencing if we disagree that Judge Guzman should not have reference to Chicago violence? Taking the very last question, the answer is no, you do not need to send it back. This court has recognized that the district court may have its own individual penal theories and different penals are apt to generate different sentence links. The weight that's afforded by the district court to the different 3553A factors or the individual reasons for the sentence, so long as it's adequately explained on the record with regard to those 3553A factors, does not mean that if this district court disputes one specific factor or the weight that was applied to that specific factor means that it needs to go back. That's within the court's discretion to afford that weight. And a disagreement as to the weight that the district court placed on one particular factor is not relevant, so long as the district court explained what that sentence was based on. It's not a question of how this court or another individual would resolve those 3553A factors and the mitigating arguments set forth by the defendant. And here, the district court explained that the nature and severity of this defendant's offense on this record overshadowed those mitigating factors. It's an interesting, to me, it's a very interesting issue because we've had this with Judge Guzman in several cases and it seems like Judge Guzman does this and he relies upon Chicago violence. And I'm not saying there's anything wrong with that, I'm just saying he has departed upward in many cases where we see sentences being departed downward now in most cases and Judge Guzman relies on Chicago violence. So if you're in front of Judge Guzman and you've committed violence, particularly with a firearm in Chicago, beware, right? I mean, when the guidelines were mandatory, Judge Guzman couldn't do this and now he can. Yes, the Booker decision restored the sentencing discretion and different federal judges not infrequently give significantly different sentences for the same types of criminal conduct and a sentencing court may substitute a theory of its own if doing so would advance the goals of the 3553A sentencing factors. However, when Judge Guzman in this particular case on this particular record spoke or commented on the Chicago gun violence, it did so while simultaneously discussing this defendant's crime and criminal history. Before even talking about the gun violence in Chicago, the district court started with this defendant's criminal history and explained its view that the repeated offenses, even while on supervision and probation, spoke to a person who is not likely to be rehabilitated or, I believe he said, totally out of control. The court expressly acknowledged defendant's statements that that statement and allocution was insufficient to rebut the defendant's criminal history. It then put defendant's crime in the context of the location of the crime, the city of Chicago. And the court then directly tied the defendant's choices to carry that loaded firearm. And I believe you asked specifically what that was. It was a Glock pistol with one round in the chamber with an extended magazine that had 30 additional rounds loaded. That's a lot of ammunition. That is a lot of ammunition that defendant stated in his allocution that he was carrying for the purpose of self-defense. And the court did not accept that explanation as a sufficient mitigating factor. It explained that this court has repeatedly stated that that is not a mitigating reason. It is not an acceptable reason to carry a firearm illegally as a prohibited person. And so the court then directly tied carrying that loaded firearm to the danger that the loaded firearm posed to everyone else around that defendant in a city that happens to be plagued by gun violence. And so the court then specifically goes back to the defendant's offense conduct and speaks to the propensity of this defendant to evade arrest. And the danger that this defendant posed in this particular situation to law enforcement by running with that loaded firearm from law enforcement. The court then again tied the Chicago gun violence back in when talking about how bullets are not intentional with their targets. The stray bullets do kill the innocent. And so the district court did find that there was a need to send a message of deterrence, but not just general deterrence. Specific deterrence. Specific to this defendant who thought that self-defense was an acceptable reason. And general to all those others who contemplated the same thing. Now, the record as a whole shows that the district court's focus was on defendant's uninterrupted pattern of offending, sometimes while under court supervision. And that that criminal history was escalating in terms of danger to the public. And the criminal history also indicated that this defendant would not be deterred within guideline sentence. The record reflects that the district court also considered defendant's other mitigating arguments concerning substance abuse and mental health. Specifically, when the district court explained its sentence, it ordered defendant to submit to drug testing and participate in a substance abuse treatment program. As well as participate in mental health programming and take any medications prescribed by a mental health treatment provider. The court also agreed to recommend facilities for both near the Chicagoland area. And it expressly stated that it heard arguments set forth by defense counsel. Acknowledged reviewing the letters submitted on behalf of defendant. As well as defendant's own statements. The district court considered the guidelines range before deviating above it. And was not abstracting its sentencing. It tailored its sentence to defendant's particular offense conduct. And after consulting the guidelines, the transcript as a whole reflected that the district court determined as to this defendant. A higher sentence better advanced those objectives of the sentencing guidelines proper applications of the 3553A factors. And the district court did not abuse its discretion. Its decision to impose a 72 month sentence was well founded in light of the defendant's decision to flee from law enforcement. While carrying a loaded firearm. With 31 rounds of ammunition. His extensive criminal history. Recidivist nature. And willingness to commit crimes even while on federal supervised release. On this record the district court had dubious prospects for rehabilitation. And found that this defendant on this record presented an acute danger to the public. If there are no other questions, the United States requests this court affirm the district court sentence. Thank you, Ms. Pinkston. Ms. Ramay will give you two minutes for rebuttal. Thank you, your honor. So it is not our contention that just because there might be one thing that the court disagrees with. That it should send it back. In this case, however, as the court has recognized. Judge Guzman appears to be imposing above guideline sentences in many firearms related cases. And it cannot be the case, just statistically speaking. That he is seeing defendant after defendant whose specific situation calls for a substantially above guideline sentence. Because that particular defendant is so outside of the norm. There is nothing about this case and this defendant that makes it so substantially outside of the norm of a firearms case. Or just a simple felon in possession case. That it leads to the inevitable conclusion that the driving factor on this is Chicago gun violence. On this sentence. It came to my attention yesterday that this particular issue is being argued en banc in the first circuit today. And I can give you the site and I can file a 28-J letter if the court desires. That is in case United States versus Flores-Gonzalez. And the panel decision is published at 34 F 4th 103. Where in that case, there is a judge in Puerto Rico who is sentencing every machine gun defendant. Well, this particular was a machine gun defendant. Substantially above guidelines just because of a rampant machine gun problem. And similarly, like just a violence in the community. That panel decided that that wasn't a reasonable reason to depart substantially above the guidelines. And now it is being heard en banc. What's the, how do you spell the first name? Flores, F-L-O-R-E-S. And then Gonzalez, G-O-N-Z-A-L-E-Z. 34 F 4th 103. Thank you very much, Ms. Romay. Thank you, your honors. Thank you, Ms. Pinkston. The case will be taken under revisal.